All right, you may be seated. The next case on the calendar, the United States v. Hunt. We'll hear from the Appellant's Counsel. Thank you, Your Honors. Excuse me. Steve Van Sempert for the Appellant Matthew Hunt. I'd like to reserve five minutes for rebuttal if I can. Thank you. So I think I want to start with framing the error that we're talking about because I think that'll help kind of get through some of the standard of review issues that are potentially present in this case. So after Bruin and after Rahimi, it's very clear that the burden is on the government to look at the historical record and to abstract a principle that justifies the current regulation that's being applied against the defendant. So here, 922G1 as applied to Mr. Hunt. Now, the interesting thing here is that in Rahimi, the Supreme Court, it canvassed the historical sources that are exactly the same historical sources that the government looks at here. And it abstracted a principle that simply doesn't apply. What we're dealing with, we're dealing with 922 here. And the issue goes to the question of whether we're going to continue to recognize that felons cannot really be carrying weapons around. You think that Bruin has changed that? Yes, Your Honor. So you think that today you want to come and say, Court, we need you to now authorize felons to continue to carry weapons. And that is going to be constitutional? Well, Your Honor, I think we would have to... Well, you say that's already the law because Bruin did that because now we need to do a historical analysis. Correct, Your Honor. So I think our position is that Bruin and Rahimi, they require courts to engage in historical analysis and they require governments to carry the burden of demonstrating that the current regulation here, 922G1, is consistent with historical principle. And I think that's pretty clear. I think, you know, the Williams case from the Sixth Circuit... The first question we have to determine is did Bruin do anything to our case law, which was very clear for Bruin, very clear. You do agree with that. Yes. You think Bruin did something to change that. Tell us how Bruin did that. Yes, absolutely. So, again, I think the Sixth Circuit in the Williams case talks about how Bruin, how Rahimi changed the law, right? Because previously under this court's law and under almost every other circuit's law, there was a two-step analysis. I appreciate the citation to the Sixth Circuit in Williams, but we just very recently went out on Bonk in the Bianchi case and we know that Bruin did not supersede our prior law regarding assault rifles. So how would you distinguish this case from that? Well, Your Honor, I think that Rahimi, right, underscores what Bruin suggested, right? So in Rahimi, you're looking at 922G8, which is, you know, only a couple sections away from 922G1, and Rahimi underscored the fact that you need to conduct a historical analysis, right? You need to conduct a historical review. So I think Rahimi itself underscores the necessity for this... Rahimi came down before Bianchi in this issue, so I just, I guess, I mean, I feel like you just have this question as an en banc court. Right, whereas what the Fifth and Sixth Circuits said, basically echoing your argument, is that Bruin and Rahimi call for a completely different mode of analysis, so anything we said before those cases is no longer binding. And maybe that's an argument, maybe it's not an argument, but doesn't Bianchi just say that's not what we do here? Your Honor, I concede that there are some hurdles to our potential relief in this particular case, and Bianchi may be one of them. I concede that it is, again, our position would be that Rahimi instructs courts to engage in historical analysis. If this court has decided otherwise, and if the court believes that Bianchi directs the court, that the pre-Bruin jurisprudence is still good law, then... Not all of it, but the stuff we decided at step one. Exactly, the step one. Yeah, if that's what the court believes, if this is what the panel believes that Bianchi stands for, then I recognize that. Can I take a step back? So you said you were going to tie this up to your preservation issue. So as I understand, in a nutshell, your argument is, like, these cases just came down. Like, how are we supposed, that's good cause, right? But you agree, for example, under Federal Rule of Criminal Procedure 52B, the law changed and I couldn't have anticipated the law changes, does not under any circumstances get out of plain error review under 52B, right? That's correct. So what authority says it's good cause under Rule 12? Right, so we rely on the Duarte case from the Ninth Circuit. I recognize, of course, that Duarte has substantially been vacated. It's being reheard on Bach, and I don't know what the Ninth Circuit is going to do. So that's the authority we rely on there. Again, I understand... But how does that make sense? Just to say, like, failure to anticipate a change in the law is not an excuse under Rule 52, but it is an excuse under Rule 12. Your Honor, that's... So that's... The Ninth Circuit in Duarte, it based its rule based on its own prior precedent, right? Which is exactly that. I'm just asking you how it makes sense to say that for purposes of appellate review, failure to anticipate the law doesn't get you out of an unfavorable standard review, but for purposes of district courts it does. Your Honor... Does that make... Like, what sane universe would have that set up? Well, and I don't know if this answers the question, Your Honor, but I think it is indicative that the government in its supplemental brief here, in the last sentence, basically the government says, look, this issue is just a matter of law. It's an issue as a matter of law. We don't need to send it back to the district court because this court can do it anyway. And so then the question is, if it's just a question of law, then what utility does the preservation requirement have? If it doesn't have to be sent back down to the district court anyway... You could say the same thing about all the people who forfeited Apprendi claims before Apprendi, who forfeited Alain claims before Alain. Like, I can make a whole log list, and you could say the same thing in all of those cases. Your Honor, I don't necessarily disagree with you in the mine run cases, right? And I think that's where the class case is helpful. Now, again, I admit class does not talk about the standard of review. The government's correct about that. But I think class does make it an interesting scenario because class says, look, you can't waive... Like, you know, the argument that the statute of conviction is unconstitutional is something so fundamental that you don't waive it when you enter a guilty plea. So if you can't waive it because it's so fundamental, then I guess it begs the question, how can you forfeit it? If it's something that's so fundamental, how can you forfeit it? Because you can forfeit, like, almost anything. So I'll give you an example. You can't waive the right to a non-biased trial judge, but you can forfeit an argument that your trial judge was biased, right? Yes, you can. Yes. Like, you can... I mean, what can't you forfeit? Well, Your Honor, I guess that's the question, right? I mean... Okay, let me rephrase. That's totally fair. What's another constitutional right you can't forfeit? Well, Your Honor, I think the argument here is that you can't forfeit the argument that your statute of conviction is unconstitutional, just like you can't waive it by entering a guilty plea, right? I think that's what class held. Because what happened in class is that the defendant had an argument that his statute of conviction was unconstitutional in the Second Amendment, as applied to him. He then entered a guilty plea, but it wasn't a conditional guilty plea. But don't you agree that almost every court that's decided this question post-class has said, oh, you know, it's not waived. We get that. So, two questions. The defendant in class had actually filed a motion to dismiss the indictment, right? Yes, that's correct. So he didn't forfeit it in the district court. The only question is whether his subsequent guilty plea waived a challenge that he'd already preserved. That's correct. So, not the class situation. The situation like this, where the defendant doesn't raise it in district court. After class, hasn't virtually every court of appeals to consider the question say that claim is reviewed for plain error? I believe that's correct. Yes. And I don't dispute that. Again, I would say that just because other courts haven't found it doesn't mean it's correct. Yes. Can I sort of bring you back to the heart of your case, which is you want us to recognize as-applied challenges based on dangerousness of a felon? Is that right? So, I think as-applied challenges are definitely on the table. So, if you look at Rahimi itself, Rahimi involved a facial. You're not making a facial claim here, are you? Well, we made it, but then the United States versus Canada came down, and so we had to acknowledge that. So, now we only have an as-applied challenge. That's correct. Okay, and I want to know how you seem to think that the way that would work is that we would only look, we would ask whether it could be constitutionally applied to your client by asking what was the felony referenced in the indictment. And because that felony was not common law burglary, it's not necessarily dangerous, and so it's okay. Yes. So, what makes you think that if we are doing as-applied challenges, we don't look beyond the indictment? Because it seems like the other courts that have dabbled in this, the Third Circuit, the Sixth Circuit, they don't limit themselves to the indictment. They look at all the surrounding facts and circumstances, and your client has been convicted several times of domestic battery. And so, it is hard for me to see, and it's like Rahimi, but with the conviction. So, it is hard for me to see, after Rahimi, how we could say this law is unconstitutional as applied to your client. Well, I think the question is, what was the basis for his conviction, his felon possession conviction? Why is that the question when you're doing an as-applied challenge? Usually, we say, can it be constitutionally applied to this person, not to this indictment? Yeah, no, that's an excellent question. So, the question, I think, is, can this law be constitutionally applied to him, right? And I think you have to look at how it was applied to him, right? The way it was applied to him was based on this particular felony conviction. Now, is it possible that if this conviction was vacated, the government could go back again? That's calling back, in your view, the indictment. I mean, you agree, right, that that's not what the Third Circuit in Williams or the Sixth Circuit in Williams is talking about. Certainly, the Sixth Circuit in Williams. I think the Third Circuit in Williams, again, I think that's also pending on Bach again. It was all facts. It happened so long ago. He hasn't done anything bad since then. It was all the facts. Yeah, I think that is part of the optics in range, certainly. Part of the reasoning. And I think that the—when you're talking about the felon possession count, right, the charge, right, we're looking at why he was convicted. He was convicted only because he possessed a gun and because he had this specific felony conviction beforehand, right? And that would be the specific felony conviction for a nonviolent burglary, right, snipping somebody's lock out of his garage. So do you think the way we do this is we just look at the indictment? I think you have to because, for example, the Williams case, I think that standard is— I mean, we'll see how it plays out in the Sixth Circuit, but it seems to be unworkable. So that's another question I have. I have serious sort of workability questions about all of this, and I know we're calling it an as-applied challenge, but it seems to me that once we start down the road of allowing as-applied individual challenges, we are actually effectively rendering the whole thing unenforceable against all but maybe a handful of felons. Because who has notice in advance of whether— entirely justifiably say, oh, I thought I was the non-dangerous kind. I thought I was going to get the exemption under the Second Amendment. And the government's going to have to prove under a hate not only you knew he was a felon, but also he knew he was the kind of felon who would not be eligible for a Second Amendment exemption. And I just think at some point, it is technically an as-applied challenge, but we better reckon with what we're talking about, which is you can't apply this statute to anyone. Well, Your Honor, I mean, there certainly are lots of considerations at play here, and I think your points are excellent. I do think in terms of an as-applied challenge being available, again, if we go back to Rahimi, Rahimi was a facial challenge, obviously, but in order to assess the facial challenge, what the court did is they looked at the statute as applied to the defendant there, right? And then they said, well, because as applied in this particular circumstance, we know that at least in one application, the statute is constitutional, and so therefore it's not facially unconstitutional. So I think Rahimi, I mean, it basically engages in an assessment of how does this statute apply to this particular individual, and it doesn't look at the specific facts of Rahimi, right, of the defendant there. They said the defendant, he went through this process, right? The process requires that there be a prior adjudication of violence, and so that's what happened here. We don't, you know, the court didn't assess whether that the domestic reshading order process was, you know, correctly applied to him or not. We just said he went through the process, he had the opportunity, and that's enough. So they looked at the circumstances of the individual defendant there, the process he went through, and then said based on the fact that it's constitutionally applied to him in this particular circumstance, the statute isn't facially invalid. So what do you make of Rahimi after Bruin, of course, citing with approval that fellow victim that essentially says that felon possession laws are presumptively lawful? What do you make of that? If Bruin got rid of it, then why in the world would the Supreme Court come right back and cite something they just got rid of? Your Honor, and I recognize this is a problem matter for my plenary argument, but Rahimi isn't perfectly clear on some of these issues. None of these cases are, are they? Well, Your Honor, I guess I would point you to, again, Sixth Circuit's decision in Williams. I mean, go there, though. I mean, we all agree with Hamilton, the law before Bruin. Hamilton, which is our case, is the law that binds us. That says felon possession laws are basically they're good. Okay. Then Bruin comes along, muddles it a bit. We've got Heller with this footnote that has this presumptively legal language in it. It's a footnote. Someone came along and called it dictum. And we know dictum can mean, well, that's not exactly the hold it might not be controlling. I never quite understood dictum from the Supreme Court of the United States, because if it said it, it might be dictum to them, but it seems like to me it's kind of binding on us. But nonetheless, they call it dictum, which means that maybe you can ignore this if you want to. But then the Supreme Court comes back in Rahimi and cites it, cites this dictum from Heller that these felon possession laws are presumptively lawful measures. That's a tough one to follow. I mean, you know, and I get where you are, because what you're doing is arguing a case. And maybe you can end up back in the United States Supreme Court, which would then say, well, some felons can now walk around with guns. But if we follow our precedent, and if Bruin didn't overrule it, and if they recite it, don't you think it's pretty clear that we really don't have a choice in this matter, do we? Your Honor, I see I'm out of time. If I can just answer that. Yeah. Your Honor, I agree the, you know, the quote dicta in Bruin and Heller and then Rahimi, I mean, they've said the same thing over and over. On the other hand, Bruin and Rahimi are very clear that the government has to engage in historical analysis in order to support the validity of a regulation. And if it's true for 922G8, it seems like it's got to be true for 922G1. I don't understand why the historical analysis would not apply to any other gun regulation. I'll come back to that question, because there is a question that you are seeing the same. It doesn't matter what it is. We now have to do this historical analysis no matter how obvious it is. We have to do that in these cases. We'll think about that. Thank you, Your Honor. We'll hear from the police attorney. Good morning. May it please the court. Mahogany Reed for the United States. Mr. Hunt's conviction for possessing a firearm as a felon in violation of Section 922G1 is not plainly unconstitutional, and the district court did not clearly err in determining that it is more likely than not that Mr. Hunt discharged a firearm inside his apartment. Well, the question before us is whether now we look at felon in possession laws as being presumptively lawful, or are we now obligated for Bruin and per the counsel on the other side perspective to now conduct a historical analysis? It doesn't mean he's going to win it, even when we do that. But at least it puts it in a different posture than simply saying, well, we already have a law. We don't have to look at this. We know that a felon cannot possess because our law says that. But he says Bruin has changed that. How do you respond to that? Well, I'll answer the question, and then I'll state why I think that's an improper framing of the question. Tell me why it's improperly framed. Well, I think it's improperly framed because Mr. Hunt's challenge on appeal is not to the methodology that the district court did or did not engage in. In the district court, it's a challenge to the constitutionality of his conviction. So the question for plain error purposes is not whether the government was required to provide historical analogs in support of Section 922G1 to prosecute him. The question is whether Bruin and now Rahimi made it clear or obvious that his conviction is unconstitutional. I think the answer to that is clearly no. Is that driven by us to make it a determination of saying it is plain error review? That's right, Your Honor. If it is not plain error review, then where does it fall? Well, if it's not plain error, if this court determines that Mr. Hunt's conviction is plainly erroneous, is that the question? We determine it's not subject to plain error review under the Ninth Circuit's now vacated reasoning. Oh, I see. If you determine that the question is not subject to plain error review and decide to engage in plenary review, then no, you would still have to determine whether this court's pre-existing precedents is overruled or abrogated by Bruin. And we think the answer to that is no because, you know, as Your Honor mentioned, Rahimi reiterated the presumptively lawful language in Heller that this court's pre-existing precedents rely on. And not only that, but Rahimi also went out of its way to emphasize that it was not suggesting that the Second Amendment prohibits legislatures from disarming categories of individuals deemed to present a special danger of misuse. And it's our position that Section 922G1 falls squarely within that construction of the constitutional question. And so we don't think that Bruin or Rahimi abrogated this court's pre-existing precedents, but we don't think this court needs to necessarily answer that question in this case because under plenary review, no decision of the Supreme Court, no decision of this court, and no decision of a consensus of courts of appeals have determined that Section 922G1 is unconstitutional either on its face or as applied to What the hell do you mean by presumptively lawful? Could that language mean that you can bring an applied challenge? Well, so this court has recognized in its decision Warren Pruess that presumptively lawful suggested that Section 922G1 and other felon in possession prohibitions are lawful on their face and are susceptible to as applied challenges. I don't know that's Heller's presumptively lawful language meant that an as applied challenge would succeed. And it's our position that an as applied challenge would not succeed to Section 922G1 under sort of any analytical pathway. Unless this court has further questions on the plenary question, I think this court can resort to the Sorry, I do have a question about the plenary thing. I understand the argument about class that you're making, but it does seem that there are courts out there, not ours, we have not done this, but that they analyze a forfeited constitutional challenge to an indictment under Rule 12, not under Rule 52, and so they apply Rule 12's good cause standard. And I guess I was just wondering if the government today has a position on whether Rule 12 somehow applies to a challenge to an indictment. Yeah, we don't think that Rule 12 supersedes Rule 52. We think that on appellate review, the question is whether the defendant had an opportunity to object. If the defendant did not object, then the question is subject to plain error review. Those circuits, and I think, you know, the Seventh, Eighth, and Tenth Circuits have sort of married the Rule 12 and Rule 52 standards in some cases, but they've reconciled them. So even in those cases, and the Ninth Circuit is an outlier, I'm happy to discuss why we think Duarte's panel opinion, since now vacated panel opinion, is wrong. But the circuits that have married those two standards have said, okay, well, you know, to the extent a defendant can show good cause, then we will review his claim for plain error review. But where a defendant fails to show good cause, that claim is waived and therefore unreviewable. Which is what we've kind of said, right? We've said that. I think so. I think so. I'm having trouble. Okay, so the view is that if a defendant doesn't raise it before the district court and he can't show good cause, is that, I realize we've said that, is that the government's view? That the defendant has waived. Waived, like no review at all. I think that is our view. But where he can show good cause, then it's reviewable only for plain error. And how do you think good cause relates to the clear and obvious question under plain error? Like, so you heard the colleague I had with your colleague on the other side, where I said, like, it's black letter law that under Rule 52B, like, I could have never seen this coming, never gets you out of plain error review. Like, you are always, always, always stuck with plain error review, even if you claim you could have never seen this coming. And it would have been frivolous in the circuit I was in at the time. Doesn't get you out of Alano. You're still stuck with Alano. Does the government think good cause works the same way? Or can, I never could have seen this coming, or the reason I didn't ask the district court to dismiss the indictment is because the Fourth Circuit had rejected that exact claim. And it would have been legally frivolous for me to ask the defendant to dismiss the government. You see what I'm saying? Yeah, I think it's... Is that good cause? Is it good cause if you can say the reason I didn't raise it before the district court is because I don't ask the district court to do things that are flatly inconsistent with governing Fourth Circuit authority? I don't think that's good cause under Rule 12 either. No, I don't think that's good cause under Rule 12 either. The purpose of, you know, the plain error standard is to encourage litigants to raise their claims even when they believe that their claim may be foreclosed by circuit precedent. But we don't think that's enough to circumvent... What if it's foreclosed by Supreme Court precedent? We think even then the defendant should... It's not good cause to not move to dismiss... So, like, I'm trying to think of an example. Like, I don't know, Lawrence versus... I'm just trying to think of an example like Lawrence versus Texas or something like this. A person who never... Or, heck, before Heller, right? Before Heller, on the grounds that there was an individual... That person, not good cause either? Not good cause. I mean, that's because, you know, the general assumption is that a defendant should raise any claims in an attempt to preserve them for potential... preserve review under a potential change in precedent, right? Heller may raise a Second Amendment challenge when his claim... at a time when his claim would have been foreclosed, right? And so there has to be a first, and the point is that defendants should continue to make those claims even when their claims are foreclosed by a consensus of circuit precedent. Well, you're tracking now a case that reaverses the United States case. You're really tracking that language very nicely. Thank you, Your Honor. I read it just recently, so it's fresh in my brain. Can I ask you to go back to the merits? Is your argument a Step 1 or a Step 2 Bruin argument? Do you think this law survives at Step... Assume we get to the merits. Do you think this law survives at Step 1 or Step 2? Assume we get to... So assuming... You're not waiving anything by answering the question. Okay, yeah. Assuming we get past plain error and assuming this Court believes that Bruin and Rahimi abrogated its precedents, we do believe that under Step 1 of Bruin that individuals with felony convictions are not among the people for purposes of sort of assessing whether they're covered by the text of the Second Amendment. Has the Court accepted the people argument after Rahimi? Certainly no court of appeals that I'm aware of, and so we would very quickly pivot to... Because the obvious problem there is that would suggest, because we all agree that people who were convicted of serious crimes who served their sentences still have Fourth Amendment rights, and so that would require us to read the people as meaning different things than the Second and Fourth Amendments. Well, we disagree that it's necessarily a different reading. What it is is that each... Serious criminals aren't part of the people. They're presumably not part of the people under the Fourth Amendment either. Well, we disagree with that because we think that the Second Amendment's reference to the people incorporates the historical understanding of that term for Second Amendment purposes, and so we think that different constitutional provisions incorporate different sort of historical... Why wouldn't you do that as part of the right to bear arms rather than the people? Just in the same way, for example, the example that was used, like the First Amendment protects the freedom of speech, which literally read means any law regulating anything anyone says is unconstitutional, but the Supreme Court has sensibly said that when people wrote the Constitution to use the words, the freedom of speech, they did not mean to say that you can commit criminal conspiracy through words. They did not mean to suggest that you can libel a private citizen. Like, even though the words, the freedom of speech, facially would cover libel and criminal conspiracy and criminal solicitation, the freedom of speech referenced in the Constitution incorporates historical limitations. Why couldn't you say the same thing about the Second Amendment, that the right to bear arms in the Second Amendment incorporates these kinds of limitations? Yeah, we think that the right to bear arms is also a sort of textual hook for imposing limitations on the right of individuals with felony convictions to bear arms, but the entire analysis is a sort of combined text and history question. I don't think that there's a really clear dividing line between sort of what constitutes the textual inquiry and what constitutes a historical inquiry. Even if you get to the second historical step, we think we've provided sufficient historical analogs to justify Section 922G1 as applied to all individuals with felony convictions. Who do you think is the strongest historical analog to this specific crime at issue here? I'm bracketing whether that's the right way to ask the question, but assuming for the sake of argument that's the right way to ask the question, what do you think is the closest historical analog to this law? Yeah, I think assuming for the sake of argument only, I think that the historical felony punishment laws that subjected individuals who committed different types of burglary and theft would probably be the closest historical analog. And I appreciate Counsel Opposite's suggestion that sort of theft or burglary of structures other than dwellings were not severely punished at the founding. I did a little bit of historical research and found at least two historical statutes that imposed the penalty of death against an individual who burglarized a structure other than a dwelling in Connecticut and in New Hampshire. Happy to provide those to the extent this Court thinks those historical analogs are necessary to resolve the constitutional question here. We don't think they are. We think this case presents a very easy question under plain error. This Court can follow the framework it set out in Claybrooks to just quickly resolve Mr. Hunt's unpreserved Second Amendment challenges, Section 922G1. If the Court has no further questions about the sentencing issue, we'll rest on our briefs on that issue, and I'll give the rest of my time. Let me ask you a question, and it may be kind of outside the scope of your job to answer it. So the government really wants courts to just keep doing this on plain error grounds. It seems like I'm just sort of surprised that you were pushing the plain error point so hard. Wouldn't the government like to get some guidance on the answer to this question sooner rather than later? Yes. Primarily from the Supreme Court, we think that the Supreme Court will review by the Supreme Court is eventually going to be necessary, but we think that where the issues are unpreserved, the proper way to dispose of those cases is to on plain error review. Thank you so much. Thank you, Your Honor. Mr. Van Stempel, you have some time in rebuttal. Thank you, Judge. Just a couple things here. So first of all, to respond to your question about the presumptive unlawfulness language, I do believe, again, I guess I would refer back to my prior answer, right? This is a question about what does the presumptively unlawful language in HELLA and ADDICTA means and could that language permit a, as applied, challenge? Correct. Right. And I think the answer is, again, that the fact that REHME underscored the fact that courts are required to engage in historical analysis, I think that relying on presumptions aren't enough. I know that some circuits have, right, post-REHME, but other circuits, I think, again, I would point to the Diaz case and then also the Sixth Circuit case in Williams, have articulated why they don't feel that that's sufficient. And I would suggest that the same is appropriate here. Couldn't, like, the phrase presumptively unlawful, I guess I would have thought it meant, well, we're just presuming it because the issue is not in front of us right now. We're not actually deciding the case, not in front of us, but, you know, when it gets here. Yes. Exactly. So it could very well be a shorthand for that issue is not before the court, and so we're not going to touch that right now, right? We're not resolving it right now. We're obviously touching it. Well, yes. Yes. Yeah, exactly. Not resolving it. Yes. I think that's a better way to put it. So I guess that would be my response to that. Second, in terms of the historical analog, I think this is your question, Judge Haydens. It is interesting because in other cases, so in the Diaz case, for example, in the Fifth Circuit, right, there the court did, or the government did reach out of sort of the set of historical analogs that we've all been talking about in this case, which is the same as what we've been talking about in REHME, right? So there in Diaz, they reached out and they said, well, look, there's this other statute in the colonial era that penalized horse theft. It was a capital crime apparently back then. And so they analogized from that horse theft to vehicle theft, so therefore the defendant there lost the as-applied challenge. Again, here, I mean, to the extent that the government has additional research, I haven't seen that. But again, I would suggest that that's different than what's happened here in the briefs, that the government has not reached outside of the historical sources that were already reviewed in the REHME case. And so I haven't seen any historical analog. So while you have a few minutes left, can I just ask you to respond, broadly speaking, to the Eighth Circuit's reasoning? So I'll summarize very briefly at a high level of generality. What I understand the Eighth Circuit to have said is the relevant historical tradition is that government can disarm people who have been adjudicated guilty of serious crimes. That's the historical tradition. And then the court says, if you're looking for a justification for that tradition, there's maybe two different theories of justification, one I'll call sort of forfeiture and one I'll sort of call dangerousness. But what the Eighth Circuit said is the relevant tradition is the government can disarm people convicted of serious crimes. Why is that wrong? Well, I think it depends on what is meant by serious, right? Because I think what the legislature decides is a serious crime. Because one of the sort of fundamental principles you learn in first-year criminal law is the legislature decides what's a crime, right? The courts don't decide what's a crime. The legislature decides what's a crime. Yeah, exactly. So the problem is that if you run that analysis far enough down, then you get to the problem where the legislature can just decide that certain conduct is an offense and then they decide it's serious by putting a one-year penalty on it. That means it's a felony. And if it's a felony, then suddenly it's serious and suddenly it's outside the scope of a second amendment. Yeah, the power to criminalize things is quite a power, right? You can send people to jail. I mean, you can do all kinds of things to people once you decide something's a crime. That's correct. So the legislature can decide what a crime is, but the legislature can't decide what's a crime and thereby limit the constitutional right because that's what it would be, right? But why not if there's a historical tradition of disarming people who are convicted of crimes that are deemed serious? Well, because I think— Under Bruin, that's literally all we look at. Like, it's kind of weird, right, because if we were doing traditional rights analysis, we would ask what was this narrowly tailored to say all felons without inquiring as to an individual, and there'd be narrow tailoring, there'd be means and fit, but we don't do that anymore. We just say if back in the day they thought they could disarm anyone who committed a serious crime, for good. Well, and again, I think the Diaz case from the Fifth Circuit talks about this, where that approach at the end of the day leads to an approach where the legislature can regulate the Second Amendment way. And I think Justice Barrett's— But that's not what's Bruin. I mean, that's what a felony court wants to do. Well, I think Justice Barrett's concurrence in Rahimi actually talks about this, where she talks about the level of generality, of course, and that's, of course, the issue after Rahimi. The question is, you know, is it really general or is it more granular? And I think Justice Barrett articulates if it's too high of a level of generality, then you essentially regulate the constitutional right away, and I think that's not the way that constitutional rights work, certainly not in any other context. Thank you, Mr. Bernstein. And the Court notes that you have been court-opponent for this case, and I will commend you on behalf of the panel. I think you've done an excellent job. You're just the kind of lawyer that we like to have in this Court for these kind of cases, and without services from lawyers like you, it would be very difficult to do these cases. And, Ms. Reed, I will say to you, too, you're just the kind of lawyer we like to see come from the U.S. Attorney's Office up here. So, very good arguments today, and the Court will now come down and greet counsel and proceed— Thank you, Your Honor. —to the next case.
judges: James Andrew Wynn, Pamela A. Harris, Toby J. Heytens